**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     RESPONDENT,

VS.                                       **CR. 14-195 KG**

                                           **CV. 16-663**

TERRY LYNN LITTLE II,

     **MOVANT.**

**MOTION TO CORRECT SENTENCE**
**<u>PURSUANT TO 28 U.S.C. § 2255</u>**

Movant **TERRY LYNN LITTLE**, through undersigned counsel, Assistant Federal Defender Jane Greek, respectfully moves this Court to vacate and correct his sentence pursuant to 28 U.S.C. § 2255. Mr. Little is entitled to relief under *Johnson v. United States*, 135 S.Ct. 2551 (2015), because the district court violated his constitutional right to due process when it sentenced him under the residual clause of U.S.S.G. § 4B1.2. Mr. Little therefore respectfully requests that this Court grant this motion, vacate his current sentence, and resentence him.

In support of his motion, he states as follows:

**STATEMENT OF THE CASE AND THE FACTS**

Mr. Little pled guilty pursuant to a plea agreement to felon in possession of a firearm on April 3, 2014. PSR ¶¶ 2, 3.

According to the Presentence Report, Mr. Little's base offense level was 22, because he had a prior conviction for a felony crime of violence, pursuant to U.S.S.G. § 2K2.1(a)(3). PSR ¶ 21.[1] The identified prior crime of violence was a New Mexico conviction for aggravated battery with a deadly weapon. PSR ¶ 14. He received a two-level enhancement for having three or more firearms, pursuant to U.S.S.G. § 2K2.1(b)(1)(A). PSR ¶ 22. Moreover, he received a four-level enhancement because some of the firearms had obliterated serial numbers, pursuant to U.S.S.G. § 2K2.1(b)(4)(B). PSR ¶ 23. Furthermore, he received a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6), for possessing a firearm in connection with another felony offense. PSR ¶ 24. His adjusted offense level was 32. PSR ¶ 28. He received three points for acceptance of responsibility. PSR ¶¶ 30-31. Accordingly, his total offense level was 29. ¶ 32. His criminal history category was V. PSR ¶ 46. Accordingly, his advisory guideline range was 140 to 175 months. PSR ¶ 73. However, the statutory maximum sentence, and thus the guideline range, was 10 years. PSR ¶ 73, 74.

The Court sentenced Mr. Little to 120 months in the Bureau of Prisons. Doc. 45.[2] The Judgment was filed on May 12, 2012. Doc. 45.

Below-signed counsel has been appointed to represent Mr. Little in proceedings related to *Johnson v. United States*, 135 S.Ct. 2551 (2015), pursuant to this Court's Administrative Order, In the Matter of: Representation in *Johnson v. U.S.*, 576 U.S. ___, 135 S.Ct. 2551 (2015 Cases, 16-MC-00004-19 (March 25, 2016).

---

[1]"PSR" refers to the Presentence Report prepared in this cause.

[2]"Doc." refers to the documents in the docket sheet in this case.

## BASIS FOR § 2255 RELIEF

In light of *Johnson v. United States*, 135 S.Ct. 2551 (2015), and *United States v. Madrid,* 805 F.3d 1204 (10th Cir. 2015), Mr. Little . Accordingly, his sentence violates due process of law.

### II.      DISCUSSION.

#### A.      Introduction.

28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Such a motion may be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Mr. Little's motion is timely filed within one year of the decision in *Johnson*.

On June 26, 2015, the Supreme Court declared the residual clause of the Armed Career Criminal Act (ACCA) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii) – to be "unconstitutionally vague" because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."  *Johnson*, 135 S. Ct. at 2557. Thus, "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.*  The Court held the residual clause "vague in all its applications," *id.* at 2561, and overruled its contrary decisions

in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 131 S. Ct. 2267 (2011). 135 S. Ct. at 2562-63. In *United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015), the Tenth Circuit held that the identically-worded residual clause of the career offender guideline was unconstitutionally vague following *Johnson*. *Id.* at 1210-11.

The Fourth Circuit has held that "the rule in *Johnson* is substantive with respect to its application to the Sentencing Guidelines and therefore applies retroactively." *In re: Hubbard*, ___ F.3d ___ , ___, 2016 WK 3181417 *7 (4th Cir. June 8, 2016).

### B. New Mexico Aggravated Assault Is Not a Crime of Violence for Purposes of U.S.S.G. § 2k2.1 Following *Johnson*.

Mr. Little's prior conviction for aggravated assault with a deadly weapon in violation of N.M.S.A 1978, § 30-3-2(A), is not a crime of violence for purposes of U.S.S.G. § 2K2.1(a)(3). The offense does not necessarily require the intentional use of violent force. Furthermore, even though "aggravated assault" is listed in the commentary to U.S.S.G. § 4B1.2 as a crime of violence, the commentary should be disregarded.

U.S.S.G. § 2K2.1 provides that the base offense level is 22:

> if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]

U.S.S.G. § 2K2.1(a)(3). "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1, cmt. n.1. Thus, the applicable definition of "crime of violence" is:

any offense under federal or state law, punishable by imprisonment
for a term exceeding one year, that–

> (1) has as an element the use, attempted use, or threatened use
> of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use
> of explosives, or otherwise involves conduct that presents a serious
> potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Following the invalidation of the so-called residual clause by *Johnson*, a crime

of violence for purposes of this guideline and § 2K2.1 must include an element of use, attempted use

or threatened use of physical force against the person of another, or be one of four enumerated

offenses.

N.M.S.A 1978, § 30-3-2(A) provides that "[a]ggravated assault consists of … unlawfully

assaulting or striking at another with a deadly weapon." In turn,

> Assault consists of either:

> > A. an attempt to commit a battery upon the person of another;

> > B. any unlawful act, threat or menacing conduct which causes
> > another person to reasonably believe that he is in danger of receiving
> > an immediate battery; or

> > C. the use of insulting language toward another impugning his
> > honor, delicacy or reputation.

N.M.S.A 1978 § 30-3-1.

In *Ramon Silva*, the Tenth Circuit considered whether a violation of Section 30-3-2(A)

constitutes a crime of violence for ACCA purposes under the first two statutory definitions of

"assault" – an attempted battery and menacing conduct. *United States v. Ramon Silva*, 608 F.3d 663,

669-70 (10th Cir. 2010). However, it analyzed only whether either of those means of committing

assault had "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 669 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). Ramon Silva did not contest that the first theory of assault - attempted battery - had an element of attempted use of physical force, and the Court assumed that such a theory would qualify as a crime of violence. *See id.* at 669 (discussing the defense arguments). Ramon Silva instead argued that the second theory - related to menacing conduct - was not a crime of violence because it did not necessarily involve a threat of violent force. *Id.* at 670. The Court thus "focus[ed its] analysis" on that argument, and concluded, in a split decision, that New Mexico aggravated assault was a crime of violence because the menacing conduct provision required a threat of actual physical force with a deadly weapon. *Id.* at 671. Because the Tenth Circuit did not consider the insulting language prong, *Ramon Silva* should not be considered determinative of whether the offense necessarily "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).[3]

More recently, in *United States v. Rede-Mendez*, 680 F.3d 552, 560 (6th Cir. 2012), the Sixth Circuit considered whether Section 30-3-2(A) constitutes a crime of violence under Section 2L1.2 of the Guidelines, and concluded the New Mexico statute was a categorical mismatch with the Guideline definition.

First, the Court in *Rede-Mendez* considered the enumerated generic offense prong of the Guideline definition of a crime of violence, and asked whether New Mexico aggravated assault was a categorical match with the generic definition of "aggravated assault." *Id.* at 557. The Court easily concluded that "New Mexico's definition of aggravated assault' is broader than the Model Pena

---

[3]This issue is presently on appeal in the Tenth Circuit. *United States v. Maldonado-Palma*, Docket No. 15-2146.

Code based definition,' and thus the generic definition. *Id.* Indeed, the Government conceded this point. *Id.* First, the New Mexico statute was overbroad because "[u]nlike the Model Penal Code or LaFave definitions, the New Mexico statute does not require specific intent to injure or to frighten the victim." *Id.* Second, "New Mexico's definition of aggravated assault is also broader than the generic version because the underlying assault can be committed solely by using insulting language." *Id.*

The Court in *Rede-Mendez* also revisited whether the New Mexico offense "qualifies as a crime of violence under the 'element' prong." *Id.* at 558. This issue had been addressed in *Ramon Silva*, but the Court in *Rede-Mendez* employed a different analysis. Instead of simply considering the first two means of committing assault – threatened battery or menacing conduct – the Court considered the third subsection of the definition of assault under Section 30-3-1, "the use of insulting language toward another impugning his honor, delicacy or reputation." *Id.* The Court acknowledged *Ramon Silva's* prior holding, and noted that the Tenth Circuit did "not address the 'insulting language' prong," thus leaving the issue completely open. *Id.* n. 5.

Ultimately, the Court concluded that, under the elements prong, Section 30-3-2(A) was categorically not a crime of violence. *Id.* at 560. The Court's reasoning was simple. Under a strict, elements-by-elements analysis, one could be guilty of violating Section 30-3-2(A) by "using ... insulting language toward another impugning his honor, delicacy or reputation," "with a deadly weapon." *Id.* at 559-60. In fact, the Sixth Circuit noted that in "construing the elements of aggravated assault in *State v. DeMary*, the New Mexico Supreme Court held that, 'because Section 30-3-2 actually uses the word *assaulting* in its definition of aggravated assault, it may become necessary to construe the definition of assault pursuant to Section 30-3-1, N.M.S.A.1978,' and proceeded to list

each subsection of § 30-3-1, including subsection (C), the 'insulting language' definition of assault. 99 N.M. 177 (1982)." *Id.* at 558 n.7 (emphasis in original).[4] Further, prosecutions for insulting language assault have been upheld in New Mexico. *See State v. Parrillo*, 94 N.M. 98, 100 (N.M. Ct. App. 1979) (affirming conviction under Section 30-3-1(C)). Under the construction contemplated by the New Mexico Supreme Court in *DeMary*, one could commit an act that would be a violation of the law, but did not necessarily "have, as an element, the use, attempted use, or threatened use of physical force against the person of another." *Rede-Mendez*, 680 F.3d at 560. Indeed, in that construction, "[t]he use of a deadly weapon may exacerbate the threat of physical force, but does not necessarily supply the threat if it is not already present in the underlying crime." *Id.* at 558 (footnote omitted).

Critically, the Sixth Circuit recognized that the elements analysis did not depend on the likelihood of actual prosecution for that theory of liability. *Id.* at 558 n. 7. Instead, because "the provision remains part of the New Mexico criminal code and thus available to prosecutors in that state," it remained a possible construction under the elements analysis. *Id.* Accordingly, New Mexico aggravated assault with a deadly weapon does not qualify under the elements clause, U.S.S.G. § 4B1.2(a)(1).

---

[4]Although not cited by the Sixth Circuit, New Mexico Courts have applied a similar construction to an analogous statute. New Mexico penalizes assault with the intent to commit a violent felony under N.M.S.A. 1978 § 30-3-3. As described by the New Mexico Court of Appeals, this means only that the defendant commit any form of assault, "an attempt to commit a battery [,] any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery [,]" or "the use of insulting language toward another impugning his honor, delicacy or reputation," with the "intent to commit a violent felony." *State v. Schackow*, 140 N.M. 506, 514, 143 P.3d 745, 754 (Ct. App. 2006) (quoting N.M.S.A. 1978 § 30-3-1(A)-(C)). There is no reason to think that New Mexico would not apply identical analysis to aggravated assault.

Mr. Little recognizes atht "aggravated assault" is listed in the commentary to U.S.S.G. § 4B1.2. *See* U.S.S.G. § 4B1.2 cmt. 1. However, this commentary should be disregarded because it is only valid if it interprets text that it actually included in the guideline. Because this portion of the application note could only be interpreting the residual clause in U.S.S.G. § 4B1.2(a)(2), and that clause has been held to be invalid, it can have no force or effect. *Madrid*, 805 F.3d at 1210-11.

The Sentencing Reform Act requires the Sentencing Commission to "submit to Congress amendments to the guidelines" at least six months before their effective date, and provides that Congress may modify or disapprove such amendments before their effective date. 28 U.S.C. § 994(p). In upholding the Commission against a separation-of-powers challenge, the Supreme Court emphasized that this requirement makes the Commission "fully accountable to Congress." *Mistretta v. United States*, 488 U.S. 361, 393-94 (1989).

But the Sentencing Reform Act says nothing about submitting commentary to Congress, *see* 28 U.S.C. § 994(p), and does not expressly authorize the issuance of commentary. *See Stinson v. United States*, 508 U.S. 36, 40-41 (1993). The Supreme Court nonetheless held that commentary is valid and authoritative, but *only if* it interprets a guideline, and is not inconsistent with or a plainly erroneous reading of that guideline and does not violate the Constitution or a federal statute. Because the guidelines are promulgated pursuant to an express delegation of rulemaking authority by Congress, they are "the equivalent of legislative rules adopted by [other] federal agencies." *Id*. at 44-45. Because the "functional purpose of [guidelines] commentary (of the kind at issue here) is to assist in the interpretation and application of those rules," it "is akin to an agency's interpretation of its own legislative rules." *Id*. at 45. Thus, as with other agencies' interpretations of their own regulations, *id*., "commentary in the Guidelines Manual that interprets or explains a guideline is

authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id*. at 38.  Where "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Id.* at 43.

In other words, because Congress did not expressly authorize the issuance of commentary and there is no requirement that Congress review it, commentary is valid and authoritative only if it in fact interprets or explains the text of a guideline, and is not inconsistent with that guideline. Otherwise, the Commission could issue commentary having nothing to do with a guideline or changing the meaning of a guideline, with the same force as a guideline but with no accountability to Congress.  Thus, when commentary does not interpret the text of a guideline, or is inconsistent with or a plainly erroneous reading of the text of the guideline, the commentary is invalid and must be disregarded in favor of the guideline's text.

As the Fourth Circuit has explained, guidelines commentary "does not have freestanding definitional power," but is only valid and authoritative if it interprets a guideline's text and is not inconsistent with that text.  *United States v. Leshen*, 453 F. App'x 408, 413-15 (4th Cir. 2011) (prior state sex offenses did not qualify as crimes of violence under any part of the text and rejecting government's argument that they nonetheless qualified under the commentary); *accord United States v. Shell*, 789 F.3d 335, 340-41 (4th Cir. 2015) ("[The government skips past the text of § 4B1.2 to focus on its commentary," but "it is the text, of course, that takes precedence.").  The First Circuit has held that "in light of the government's concession that *Johnson* invalidates the residual clause in Guidelines § 4B1.2(a)(2)," the commentary "has become inconsistent with the remaining text of the Guideline itself," and thus "provides no basis" to conclude that felon in possession of a firearm

10

described in 26 U.S.C. 5845(a) is a "crime of violence" under § 4B1.2(a)(2). *United States v. Soto-Rivera*, 811 F.3d 53 (1st Cir. 2016). *See also United States v. Armijo*, 651 F.3d 1226, 1236-37 (10th Cir. 2011) (rejecting government's argument that because offense was listed in commentary, there was no need for it to qualify under the definitions set out in the text; "[t]o read application note 1 as encompassing non-intentional crimes would render it utterly inconsistent with the language of § 4B1.2(a)").

Accordingly, New Mexico aggravated assault (deadly weapon) is not a "crime of violence" within the meaning of § 4B1.2(a). It does not have as an element the use, attempted use, or threatened use of violent force against the person of another, and so does not interpret or explain § 4B1.2(a)(1). The term "aggravated assault" is not enumerated in § 4B1.2(a)(2), and so its inclusion in the commentary does not interpret or explain that clause. The offense of "aggravated assault" could only qualify as a "crime of violence" if it interprets or explains the residual clause. That it cannot do because the residual clause is void. *Madrid*, 805 F.3d at 1211. New Mexico aggravated assault is inconsistent with the remaining text of the guideline because it does not have an element of force and is not enumerated in the guideline. Because the commentary is flatly inconsistent with the guideline "in that following [the commentary] will result in violating the dictates of [the guideline], the Sentencing Reform Act itself commands compliance with the guideline." *Stinson*, 508 U.S. at 43.

### CONCLUSION AND REQUEST FOR RELIEF

Mr. Little's base offense level without the crime of violence enhancement would have been 18, pursuant to U.S.S.G. § 2K2.1(a)(5), resulting in a total offense level of 25. At offense level 25 and criminal history category V, his advisory guideline range would have been 100-125 months. His

current sentence is 120 months, which is higher than the low end of the applicable guideline range.

Accordingly, he asks this Court, pursuant to 28 U.S.C. § 2255 and the Due Process Clause of the

Fifth Amendment, to enter an order vacating his sentence and ordering a new hearing at which he

can be resentenced at the appropriate guideline range.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
506 South Main, #400
Las Cruces, NM 88001
(575) 527-6930
*/s Jane Greek*
Jane Greek
Assistant Federal Public Defender
Attorney for Movant

I HEREBY CERTIFY that a copy of the foregoing pleading was electronically filed using the Court's CM/ECF filing system which caused a copy to be served via electronic mail to counsel of record Assistant United States Attorney Maria Y. Armijo on June 24, 2016.

*/s Jane Greek*
Jane Greek